**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MAX SPECIALTY INSURANCE COMPANY,

      Plaintiff,

v.                                     CASE NO: 8:12-cv-727-T-26MAP

A CLEAR TITLE AND ESCROW EXCHANGE, LLC,
JAMES GONDECK, PETER G. O'MALLEY,
SUNSTONE GROUP, LLC, EYE IN THE SKY
PICTURES, INC., QUEST CAPITAL,
WILSON DEVELOPMENT, LLC, and
PHOENIX CARE LIMITED,

      Defendants.
_____/

**O R D E R**

Before the Court is Max Specialty Insurance Company's Amended Motion for

Summary Judgment as to Eye in the Sky Pictures, Inc. (Dkt. 84), the Memorandum in

Opposition (Dkt. 86), and the Reply.  (Dkt. 89).  After careful consideration of the

motion, the applicable law, and the entire file, the Court concludes the motion should be

granted.

**BACKGROUND**

Plaintiff Max Specialty Insurance Company (Max Specialty) issued a "Title

Agents, Abstractors and Escrow Agents Professional Liability Insurance Policy" to A

Clear Title and Escrow Exchange LLC (Clear Title) for the policy period August 20,

2010, to August 20, 2011.  In May 2010, Keith Brown was employed by Clear Title as an escrow agent; however, on the application for insurance that was executed on July 26, 2010, Mr. Brown is not listed as an employee.  The three employees listed included Stephen J. Cormier, as an escrow agent, and two other individuals.

There is no wrongdoing alleged against Mr. Brown; however, Mr. Cormier, the sole owner and manager of Clear Title, fraudulently disbursed funds from escrow accounts as the sole signatory to unauthorized recipients and created fraudulent reports to investors regarding the balances on deposit in the escrow accounts during the policy period.  Multiple probable cause affidavits were filed by state detectives for the grand theft of money from the escrow accounts.[1]  One of the escrow accounts was opened at Fifth Third Bank in Venice, Florida, in May 2010.  Mr. Cormier was eventually charged in the Middle District of Florida on one count of conspiracy to commit wire fraud, resulting from his defalcation of monies held in escrow.[2]  Mr. Cormier pleaded guilty on March 6, 2013, as charged and admitted to fraudulently disbursing $4.7 million from the

---

[1]  See docket 11, Exh. D.  According to the allegations of the Amended Complaint, Mr. Cormier was indicted in state court for multiple counts of grand larceny stemming from his actions of taking the money from the escrow account.

[2]  See docket 1 in United States v. Stephen J. Cormier, Case No. 8:13-cr-81-T-24TBM.

Fifth Third escrow account including money on deposit from "T.S. from Germany" which is also known as Eye in the Sky Pictures, Inc. (Eye in the Sky).[3]

In this action, Max Specialty seeks declaratory relief and rescission of the policy. The rescission count is based on the allegations that Clear Title failed to disclose Mr. Brown's professional employment and, had it done so, Max Specialty would not have issued the policy on the same terms for the same premium.  Consequently, Max Specialty seeks a declaration in count I that the policy is void and rescinded because Clear Title made material misrepresentations in failing to disclose Mr. Brown as an employee.  The present motion for summary judgment does not seek relief on the rescission count.

In three additional counts, Max Specialty addresses the claims of individuals and entities that deposited money in the escrow accounts.  The Amended Complaint alleges that monies held in escrow for several transactions were stolen by Mr. Cormier, resulting in a state court indictment for grand larceny.  Max Specialty seeks declarations that the claims of the entities and individuals who placed money in the escrow account are excluded from coverage pursuant to the criminal acts exclusion of the policy.  Eye in the Sky is not specifically mentioned in any of the counts, although it is listed as a Defendant and presumably has asserted a claim against Clear Title.

---

[3]  See docket 13 in United States v. Stephen J. Cormier, Case No. 8:13-cr-81-T-24TBM.  He has not yet been sentenced.

Eye in the Sky filed a cross-claim against Clear Title for breach of contract and negligence in this action.[4]  According to the allegations in the cross-claim, on April 29, 2011, Eye in the Sky entered into an escrow agreement with Triton in which Clear Title served as escrow agent for a $200,000 deposit.  The $200,000 held in an account at Fifth Third Bank was to be returned to Eye in the Sky if Triton did not issue a standby letter of credit.  When Triton did not issue the letter of credit, Eye in the Sky demanded the return of the money held in escrow to no avail.  Eye in the Sky obtained a clerk's default against Clear Title.[5]  Max Specialty requests in this motion for summary judgment that this Court declare that no coverage exists under the policy for the damages suffered by Eye in the Sky.

## THE PROFESSIONAL LIABILITY POLICY

The policy provides coverage for the professional liability of title agents, abstractors and escrow agents.[6]  The policy insures claims made by reason of a wrongful act in the performance of or failure to perform professional services by the insured.[7]  A wrongful act is defined as an actual or alleged "act, error, omission, misstatement, misleading statement, neglect or breach of duty" in the performance of professional

---

[4]  See docket 60 (Answer and Crossclaim).

[5]  See docket 83.

[6]  See docket 11, Exh. B.

[7]  See docket 11, Exh. B at Section I-1.

-4-

services.[8]  Professional services include services performed for others for a fee in the

capacity as an escrow or closing agent.[9]  Section III of the policy provides for exclusions

and excludes in pertinent part:

> [A]ny "Claim" against the "Insured";
> .   .   .   .
>
> f.  Based on or directly or indirectly arising out of or resulting
> from:
> .   .   .   .
>
> (4)   Any criminal, fraudulent, or dishonest act.  However, we
> shall defend such allegations against the "Insured" if it
> involves a "Claim" otherwise covered under the Policy until
> final adjudication; . . .[10]

An "Insured" is defined in pertinent part as follows:

> the "Named Insured"[11] and:
>
> (1)   any past, present or future principal, partner, officer,
> director, stockholder, trustee or employee of the "Named
> Insured" but only with respect to "Professional Services"
> performed on behalf of the "Named Insured"; . . .[12]

---

[8]  <u>See</u> docket 11, Exh. B at Section II-O.

[9]  <u>See</u> docket 11, Exh. B at Section II-I.

[10]  <u>See</u> docket 11, Exh. B at section III-f.(4).

[11]  "'Named Insured' means the entity or person named in the Declaration."  <u>See</u>
docket 11, Exh. B (the policy) at p. 2.  The policy lists Clear Title as the Named Insured.

[12]  <u>See</u> docket 11, Exh. B at section II-F(1).

## SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted where there is no genuine dispute regarding a material fact.  Fed.R.Civ.P. 56(a).  A summary judgment is an appropriate vehicle for interpretation of an insurance contract as a question of law.  See, e.g., Technical Coating Applicators, Inc. v. U.S. Fidelity Guar., Co., 157 F. 3d 843 (11th Cir. 1998); Talat Enters., Inc. v. Aetna Life & Cas., 952 F. Supp. 773, 776 (M.D. Fla. 1996).  The policy, however, must contain clear and unambiguous wording to resolve the issue as a matter of law.  Talat, 952 F. Supp. at 776.

## ANALYSIS

Eye in the Sky argues that Max Specialty waived its coverage defenses and comes to this Court with unclean hands by failing to defend Clear Title in accordance with the clear language of the policy.  For the following reasons, the Court finds the criminal acts exclusion operates to deny coverage.

The policy contains a criminal and fraudulent acts exclusion provision, precluding coverage for claims arising out of[13] any "criminal, fraudulent or dishonest act."[14]  The

---

[13]   The phrase "arising out of" any criminal act has been construed broadly to include "originating from" and similar meanings.  See Twin City Fire Ins. Co. v. Fireman's Fund Ins. Co., 386 F. Supp. 2d 1272, 1276 (S.D. Fla. 2005) (relying on Florida cases).

[14]   The general public policy doctrine in Florida insurance law provides that an insured who has committed a criminal act may not recover under an insurance policy. See Everglades Marina, Inc. v. American Eastern Dev. Corp., 374 So. 2d 517, 519 (Fla. 1979).  In Everglades Marina, the policy at issue did not contain an express clause excluding criminal acts from coverage.  The Florida Supreme Court answered a specific

provision continues, however, to require Max Specialty to defend "such allegations" against the insured until "final adjudication" if the claim is "otherwise covered" under the policy.  An insured under the policy is defined as the named insured as well as any present principal of the named insured, which would include Mr. Cormier as the sole owner of Clear Title, the named insured, as long as the principal is performing professional services on behalf of the named insured.

    Mr. Cormier committed a crime when he took money from the escrow account while serving as the escrow agent pursuant to the escrow agreement.  See docket 84, Exh. A.  He has pleaded guilty, and clearly, the claim for failure to return the escrow funds arose out of a criminal act.  The issue of whether Max Specialty owed a duty to defend Mr. Cormier, however, is not before this Court. The issue raised by Eye in the Sky is whether Max Specialty owed a duty to defend Clear Title as an insured, based on the language of the exclusion regarding Max Specialty's duty to defend if allegations of criminal acts were made and the claim is "otherwise covered" by the policy.

    The only underlying claim before this Court to review to ascertain whether any negligent acts are alleged is found in the cross-claim filed by Eye in the Sky against Clear Title.  The cross-claim alleges that Clear Title's negligence in failing to return escrow funds under the escrow agreement constitutes breach of the escrow agreement and

---

certified question, holding that Florida's public policy against recovering insurance when the insured commits a crime, does not extend to innocent third-party beneficiaries where the policy does not contain a clause excluding criminal acts from coverage.

negligence.  The cross-claim does not allege the criminal acts of Mr. Cormier, but alleges only negligence in the failure of Clear Title to return escrow funds.  Eye in the Sky contends that Max Specialty had a duty to defend Clear Title, as opposed to Mr. Cormier, pursuant to the last sentence in Section III, f.(4) of the policy.  Had Max Specialty defended Clear Title in the various claims made by individuals and entities for the return of escrow funds deposited pursuant to escrow agreements with Clear Title, then defaults would not have been entered.[15]

Max Specialty contends that the criminal acts exclusion applies to Clear Title, even though Clear Title is not guilty of a crime.  Max Specialty further asserts that Clear Title never sought coverage under the policy.  The Court finds that at this juncture of the proceedings, Mr. Cormier has pleaded guilty and awaits sentencing.  Although the cross-claim alleges negligence in the failure to return the escrow funds, which would be "otherwise covered" under the policy, the "allegations" of the criminal act have been

---

[15]   This Court is aware of another case in which Max Specialty successfully obtained a default final judgment against Clear Title.  See Michael Patey v. A Clear Title and Escrow Exchange, LLC, et al., Case No. 8:12-cv-212-T-33TBM.  The complaint in Patey contained one count for breach of contract and two counts for negligence; however, the plaintiffs there were too tardy in seeking to join Max Specialty as a liability insurance party defendant.  See docket 23, Order denying Plaintiffs' Motion to Join Max Specialty as Liability Insurance Party Defendant, in Case No. 8:12-cv-212-T-33TBM.  Yet another case has been filed by Max Specialty against Clear Title, Mr. Cormier, and two claimants, Wilson Development, LLC and KPW Real Estate, LLC.  See Max Specialty v. A Clear Title and Exchange, LLC, et al., Case No. 8:13-cv-843-T-17EAJ.  In that case, as here, Max Specialty asserts the criminal acts exclusion in addition to exclusions pertaining to failing to follow escrow instructions.

determined in criminal court.  The written plea agreement contains the factual basis which includes the claim alleged in the cross-claim, thereby establishing that the claim arose out of a criminal act, which happened to be committed by the principal of Clear Title.  The policy does not make an exception for crimes committed by principals as opposed to crimes committed by the entity which that principal represents.  The exclusion places a duty to defend on Max Specialty for the "insured" which includes both Mr. Cormier and Clear Title.   Nevertheless, at this stage of the proceedings, it cannot be disputed that an insured committed a criminal act from which the claim originated.

Furthermore, Eye in the Sky's argument that Max Specialty waived its coverage defense with respect to the criminal acts exclusion is without merit.  Section 627.426(2) of the Florida Claims Administrative Statute does not apply to a defense of no coverage. See Mid-Continent Cas. Co. v. Basdeo, 742 F. Supp. 2d 1293, 1331-32 (S.D. Fla. 2010), aff'd. 477 Fed. App'x 702 (11th Cir. 2012); Hanover Ins. Co. v. Dolly Trans Freight, Inc., No. 6:05-cv-576-Orl-19DAB,  2006 WL 1169496, at *5 (M.D. Fla. May 2, 2006) (citing Almendral v. Security Nat'l Ins. Co., 704 So. 2d 728, 730 (Fla.Dist.Ct.App. 1998)). Section 627.426(2) does not create coverage "where a particular claim is expressly excluded from coverage."  AIU Ins. Co. v. Block Marina Invest., Inc., 544 So. 2d 998, 999-1000 (Fla. 1989) (citing Country Manors Ass'n v. Master Antenna Systems, Inc., 534 So. 2d 1187 (Fla.Dist.Ct.App. 1988)).  To assert a "coverage defense," coverage must

otherwise exist, i.e., it must exist in the first place.  Country Manors, 534 So. 2d at 1195.[16]

Because Max Specialty relies solely on the criminal acts exclusion to the policy to deny

coverage, section 627.426(2) is inapplicable.

    With respect to the equitable arguments asserted by Eye in the Sky concerning

Max Specialty's failure to defend Clear Title,[17] no authority has been cited that this failure

now requires a finding of coverage.  The unambiguous terms of the policy preclude

coverage under the criminal acts exclusion for any claim arising out of the criminal acts

of misappropriating the escrow funds.  No genuine issue of fact exists with respect to the

criminal act.  While it seems grossly unfair that Clear Title agreed to perform its duties as

escrow agent and its principal essentially stole the money, the policy excludes coverage

on this basis.[18]

---

    [16]  See also Continental Ins. Co. v. Roberts, No. 8:05-cv-1658-T-17 MSS, 2008
WL 1776552, at *5 (M.D. Fla. Apr. 18, 2008); Solar Time Ltd. v. XL Specialty Ins. Co.,
No. 02-23548-Civ-Jordan, 2004 WL 1683149, at *5 (S.D. Fla. Jun. 15, 2004).

    [17]  Eye in the Sky has already obtained a clerk's default on its cross-claim against
Clear Title.  See docket 83.

    [18]  An example of a criminal acts exclusion precluding coverage to innocent third-
party beneficiaries is Westport Ins. Corp. v. Law Offices of Gerald J. Lindor, P.A., Case
No. 8:61644-CIV, 2009 WL 722254 (S.D. Fla. Mar. 18, 2009).  There, an attorney pled
guilty to misappropriating client funds totaling $3 million.  As part of the
misappropriation, the attorney held loan closing funds of approximately $470,000 for the
purpose of paying off the clients' loan with their loan servicing agent.  The clients faced
foreclosure on their home for their attorney's failure to pay.  The district court found that
no coverage existed based on the plain language of the exclusions in the professional
liability policy, notwithstanding the clients' presumed status as third-party beneficiaries
of the policy.

It is therefore **ORDERED AND ADJUDGED** that Max Specialty Insurance

Company's Amended Motion for Summary Judgment as to Eye in the Sky Pictures, Inc.

(Dkt. 84) is **GRANTED**.

      **DONE AND ORDERED** at Tampa, Florida, on June 12, 2013.

                          _s/*Richard A. Lazzara*_____

                          **RICHARD A. LAZZARA**
                          **UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record